**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES** | **:** | **3:00-CR-133** |
| | **:** | |
| **v.** | | |
| | **:** | **(JUDGE MANNION)** |
| **JESSE TIRADO,** | **:** | |
| **Defendant** | **:** | |

## <u>MEMORANDUM</u>

## I.    BACKGROUND

On April 23, 2020, defendant Jesse Tirado, a federal inmate confined at the Metropolitan Detention Center in Brooklyn, New York ("MDC-Brooklyn"), filed, *pro se*, a letter Motion for Compassionate Release under 18 U.S.C. §3582(c)(1)(A), and request for immediate transfer to home confinement, related to his 7-month supervised release revocation prison sentence, (*see* January 31, 2020 Judgment, Doc. 697), due to the COVID-19 pandemic. (Doc. 700). Also, on April 23, 2020, defendant's wife, Heather A. Tirado, sent a letter to the court, (Doc. 701), requesting the court to order defendant's early compassionate release from prison due to the COVID-19 pandemic and to direct the BOP to immediately release him to home confinement, or in the alternative to a halfway house for the remainder of his prison sentence. She alleges that defendant's current release date from

1

prison in August 12, 2020,[1] and that his early release will assist her. Ms. Tirado states that after his sentencing, defendant was taken to FDC-Brooklyn while he was waiting to be transferred to a prison in Pennsylvania when the COVID-19 outbreak occurred essentially stranding defendant where he was. Ms. Tirado attached to her letter copies of her medical records indicating her medications as well as her treatment for her conditions, and delinquent rent notices and eviction notices from a property management company.

On April 27, 2020, May 6, 2020, and May 14, 2020, defendant sent the court three additional letters, (Docs. 702, 704 & 706), in support of his motion. Defendant claims that he has submitted several requests to the Warden at MDC-Brooklyn for release to home confinement and that he has not received any response. He states that the 30-day period for the Warden to respond has now expired and he essentially alleges that he has complied with the exhaustion requirement.

Defendant also requests the court to appoint him counsel. (Doc. 700 at 4).

On May 8, 2020, the court directed the government to respond to defendant's motion by May 15, 2020 since defendant asserted he complied with the exhaustion requirement and to include defendant's medical conditions as well as the safety measures adopted by the prison due to the COVID-19 pandemic. (Doc. 705). The government timely filed its response

---

[1] According to the Government the actual projected release date is August 20, 2020.

with attached Exhibits 1 & 2, including defendant's BOP medical records which it filed under Seal, as well as a copy of a response dated May 12, 2020 submitted by the Warden of MCC New York and the Warden of MDC-Brooklyn (D. Edge) in response to an Order issued by Chief Judge Mauskopf of the U.S. District Court for the Eastern District of New York regarding the safety protocols enacted by both prisons due to the COVID-19 pandemic and the number of staff and inmates at the prisons who have tested positive for the virus. (Docs. 709, 711, 711-1).

On May 28, 2020, Tirado filed a supplement, (Doc. 714), in support of his motion with an attached Exhibit, namely, a copy of an Evaluation performed by Dr. Homer Venters of MDC-Brooklyn regarding its COVID-19 response that was filed in a class action pending against the Warden in the Eastern District of New York opining that the prison "has failed to implement straight-forward best-practices derived from the CDC guidelines as well as outbreak best practices." (Doc. 714 at 25). In his 2-page supplement, Tirado repeats that he made several efforts to submit requests for compassionate release to the Warden but alleges that the Warden never responded to them. Tirado also repeats that he is being subjected to "harsh conditions" in the prison and that the prison has failed to "ensure the safety and well being of [the inmates]."

On June 9, 2020, Tirado filed another supplement styled as a letter to the court in which he states that he recently received medical attention at the prison on June 3, 2020, and that it was again confirmed that he has

3

hypertension as well as "asthmatic lungs" for which he is prescribed an Albuterol inhaler. (Doc. 715). He attached a copy of his prescription to his filing which indicates that he is not to use the inhaler daily but only as needed to prevent an asthma attack. Tirado alleges that it took months for the medical department to provide him with treatment, and that the prison is still "in no way, shape, or form complying with CDC guidelines to ensure the safety [of inmates]." He further alleges that the conditions in the prison are becoming worse.

On July 6, 2020, Tirado filed a motion requesting the court to alter his 7-month prison sentence to time served and immediately release him from prison due to alleged violations of his constitutional rights under the 4th, 8th, and 14th Amendments. (Doc. 716). Specifically, Tirado challenges the conditions of his confinement in MDC-Brooklyn alleging that they violate the 8th Amendment as well as his due process rights under the 14th Amendment. In this motion, Tirado also contends that the BOP is not properly executing his sentence and failed to give him credit for his good conduct time earned.[2]

---

[2]To the extent Tirado challenges the BOP's execution of his sentence in his motion, (Doc. 716), he must file a petition for writ of habeas corpus under 28 U.S.C. §2241 against the warden of MDC-Brooklyn in the district where he is confined. *See* Cardona v. Bledsoe, 681 F.3d 533 (3d Cir. 2012). Insofar as Tirado raises constitutional claims in his motion, (Doc. 716), he must file a civil rights action under Bivens in the district where the alleged constitutional violations occurred after he exhausts his BOP administrative remedies. *See* Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002).

As such, Tirado's latest motion, (Doc. 716), will be dismissed.

In his motion, defendant Tirado seeks the court to immediately release him from confinement in prison at MDC-Brooklyn to home confinement in Harrisburg, Pennsylvania, due to his fear that he may contract the COVID-19 virus in the prison since there are confirmed cases there. The government's Exhibit 1, Doc. 711-1, indicates that at MDC-Brooklyn, the numbers regarding the virus, as of May 12, 2020, are as follows: Inmates tested, 15; Inmates positive, 6; and Staff positive, 37.

For the reasons set forth below, insofar as the defendant's filing is a motion for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i), it will be dismissed without prejudice for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). To the extent defendant also seeks the court to order the BOP to find him eligible for immediate home confinement designation under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. 116-136, §12003, the court does not have authority to grant his request for relief and order the BOP to release him to home confinement.[3]

---

[3]Defendant specifically states that his motion, (Doc. 700), seeks relief pursuant to the CARES Act in addition to a motion compassionate release pursuant to 18 U.S.C. §3582(c)(1)(A).

## II.   DISCUSSION[4]

In his present filings, (Docs. 700, 701, 702, 704 & 706), defendant Tirado seeks his immediate transfer from MDC-Brooklyn to home confinement and requests the court to allow him to serve the remainder of his 7-month prison sentence in home confinement stating that he is "a nonviolent technical probation violator", and seemingly not a danger to the public. He states that the court should release him from prison since it will be unfair to make him serve the full 7-months of his sentence because he may contract the deadly COVID-19 virus in prison. Defendant correctly alleges that there are currently inmates and staff at MDC-Brooklyn who have contracted the COVID-19 virus. Defendant contends that he is being subjected to "inhumanity conditions" and "harsh conditions" since the prison instituted a 24-hour lockdown with only three showers and three phone calls per week. He also alleges that he has chronic medical conditions that will put him at greater risk to suffer more severe consequences if he does contract the virus. In particular, defendant alleges that he has "high blood pressure" as well as asthma and a degenerative disc problem in his lower back. Defendant also alleges that he recently requested an inhaler for his "asthmatic lungs" but that he "once again received no medical attention in response", (Doc. 700 at 2), and that the understaffed prison is not able to

---

[4]Since the government notes in its brief, (Doc. 711 at 8 n. 1), the correct background of this case regarding defendant's current 7-month prison sentence that was imposed by this court on January 31, 2020, it will not be repeated herein.

provide him with the medical attention he needs. (Doc. 702 at 6). He further alleges that he submitted several sick call requests for medical care but that the prison failed to respond to them. (Doc. 706).

In contrast, defendant's recent BOP medical records submitted by the government, (Doc. 709 at 2-19), show that defendant has received medical treatment in February and March 2020. Tirado's June 9, 2020, filing shows that he just received medical care on June 3, 2020. Defendant's records also do not indicate that he has been diagnosed with any recognized medical conditions which would put him at a higher risk of suffering more severe complications if he does contract the virus in the future. In fact, the most recent records reveal that he denied having any hypertension and respiratory conditions, he had no angina, cough or shortness of breath, and that his current medical condition was "healthy male." Defendant was diagnosed with arthritis in his lower back in 2017, but he was not taking any medication for it. Also, defendant is currently 44 years old (DOB 04/12/1976) and not in the high risk age category.

Defendant did submit evidence to show that he has asthma but he is only prescribed a rescue inhaler if he has an attack, not a daily inhaler. (Doc. 715). As such, his own recent filing belies his claim that he is being deprived of medical care at the prison.

Defendant also contends that staff members are exposed to the streets on [a] daily basis" and that he is in "a conjested (sic) overcrowded prison making [him] vulnerable and raising the risk of contracting [the] deadly

7

[COVID-19] virus." In his letter, defendant offers a proposed plan if the court releases him to home confinement, including possible employment.

Additionally, defendant alleges that he submitted several requests to the Warden at MDC-Brooklyn seeking his release to home confinement and "made countless efforts" to submit requests to the Warden but his requests have been ignored. (*See also* Doc. 714). He contends that as of his April 27, 2020 filing, (Doc. 702), it "marks the 30 day grace period" for the Warden to respond since he submitted his requests. In his June 9, 2020 filing, defendant again states that he never heard back from "Warden Derickedge" "regarding consideration for compassionate release", and he alleges that it is "more or likely [that] staff trashed [his] request", as is common at the prison. Defendant did not offer any evidence to support his allegation regarding his request to the Warden. Thus, defendant requests the court to waive the 30-day requirement contained in §3582(c)(1)(A) based on his allegation that his requests have not been answered and based on alleged "extraordinary and compelling reasons" due to the COVID-19 pandemic, his alleged medical conditions, and his claim that his wife and two step children are not able to meet daily necessities.[5]

---

[5]Since the government submitted the safety protocols enacted at MDC-Brooklyn as Exhibit 1 attached to its brief, Doc. 711-1, as directed by the court, they are not repeated herein. Also, the number of COVID-19 cases in a federal prison can be found at COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/.

Thus, he also contends that the recommended safe practices to curtail the spread of the virus, such as "sanitizing the inmate's living quarters", are not being accomplished and that he is being subjected to hash conditions at the prison. As such the prison is not taking adequate steps to avoid "the contraction and spread of COVID-19." Defendant submitted the Evaluation of Dr. Venters for support. Based on these allegations, defendant contends that "there exists extraordinary and compelling circumstances" warranting his immediate release from prison to home confinement.

In its brief in opposition, the government states that defendant's request for compassionate release from prison to home confinement under the First Step Act, 18 U.S.C. §3582(c)(1)(A), should be denied "because the defendant has not exhausted his administrative remedies, which is statutorily required", and "[a]lthough [he] claims that he requested a reduction in his sentence, he has failed to substantiate this assertion." It further represents that "BOP officials have reviewed Tirado's inmate file and MDC records and confirm that Tirado has not filed a request for a sentence reduction pursuant to the First Step Act." As such, the government asserts that "Tirado's motion is, therefore, premature." (Doc. 711 at 9-10).

The government contends that insofar as defendant is seeking relief under the CARES Act "decisions regarding the designation of inmates for home confinement" "are consigned exclusively to the discretion of the Director of the Federal Bureau of Prisons (BOP) and are not subject to

9

judicial review", and that "this Court lacks the authority to grant the relief that Tirado is seeking." (Id. at 9).

The court concurs with the government regarding its above two stated assertions and defendant's motion will be dismissed without prejudice since it is premature due to his failure to exhaust his BOP administrative remedies to the extent it is under the First Step Act, 18 U.S.C. §3582(c)(1)(A). Defendant's motion will be dismissed to the extent it is under the CARES Act since the court does not have the authority to grant defendant relief under the Act.

To the extent Tirado's motion is one for compassionate release under §3582(c)(1)(A), the government has indicated that defendant did not exhaust all of his BOP administrative remedies regarding any request with the Warden for compassionate release to home confinement due to the COVID-19 virus. Defendant appears to allege that attempting to exhaust his BOP administrative remedies would be futile since his several requests have been ignored and that the exhaustion requirement should be waived since the COVID-19 virus along with the alleged unsanitary conditions at the prison present an extraordinary situation.

Also, defendant claims that due to the threat that he may contract the COVID-19 virus at MDC-Brooklyn he qualifies to be immediately released to home confinement based on the CARES Act and pursuant to the FSA, 18 U.S.C. §3582(c)(1)(A). "As amended by the First Step Act, 18 U.S.C. §3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence

for 'extraordinary and compelling reasons' 'upon motion of the Director of the Bureau of Prisons' or 'upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" United States v. Feiling, 2020 WL 1821457, *4 (E.D.Va. April 10, 2020). As mentioned, defendant states, without support, that he submitted several requests for compassionate release to the Warden at MDC-Brooklyn and that the Warden failed to respond and 30 days have lapsed. However, the government represents that "MDC records confirm that Tirado has not filed a request for a sentence reduction pursuant to the First Step Act."

As such, defendant's motion for compassionate release must be dismissed for lack of jurisdiction since he has not exhausted his administrative remedies under §3582(c)(1)(A), "which requires that a defendant seeking compassionate release present [his] application to the BOP and then either (1) administratively appeal an adverse result if the BOP does not agree that [his] sentence should be modified, or (2) wait for 30 days to pass." United States v. Zukerman, 2020 WL 1659880, *2 (S.D.N.Y. April 3, 2020). See also United States v. Raia, 954 F.3d 594 (3d Cir. April 2, 2020); United States v. Smith, 2020 WL 2063417, *2 (N.D.Oh. April 29, 2020) (court held that defendant failed to fully exhaust his administrative remedies with respect to his motion for compassionate release "[b]ecause the Warden

11

explicitly denied his [] request, [defendant] needed to exhaust by appealing the Warden's decision." (citing 28 C.F.R. §542.15(a); B.O.P. Program Statement 5050.50 §571.63 (citing the Administrative Remedy Program appellate procedure as the proper method of administratively appealing a denied §3582(c)(1)(A)); United States v. Brummett, 2020 WL 1492763, at *1-2 (E.D. Ky. Mar. 27, 2020) (denying request for compassionate release due to COVID-19 for failure to exhaust because inmate did not appeal warden's denial of his request for a reduction in sentence)); United States v. Edwards, 2020 WL 1987288 (M.D.Tn. April 27, 2020) (Court denied motion for compassionate release without prejudice until the exhaustion requirement of 18 U.S.C. §3582(c)(1)(A(i) is satisfied). Here, as the government represents, Tirado has not exhausted all of his BOP administrative remedies as required prior to his instant filing.

Secondly, the court cannot yet determine if defendant has demonstrated that "extraordinary and compelling reasons" warrant a reduction of his sentence since he has not exhausted his administrative remedies. *See* Zukerman, 2020 WL 1659880, *2 ("in order to be entitled to relief under 18 U.S.C. §3582(c)(1)(A)(i), [defendant] must both meet the exhaustion requirement and demonstrate that 'extraordinary and compelling reasons' warrant a reduction of [her] sentence."); Raia, 954 F.3d at 597 ("The First Step Act empowers criminal defendants to request compassionate release for 'extraordinary and compelling reasons'" after the defendant exhausts administrative remedies with the BOP.) (citing 18 U.S.C

12

§3582(c)(1)(A)(i)). The Third Circuit in <u>Raia</u>, *id*., also held that defendant's failure to comply with §3582(c)(1)(A)'s exhaustion requirement "presents a glaring roadblock foreclosing compassionate release at this point."

As the Third Circuit in <u>Raia</u>, 954 F.3d at 597, explained, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." (citation omitted). *See also* <u>Feiling</u>, 2020 WL 1821457, *5 ("the Court agree[d] with the Third Circuit [in <u>Raia</u>] and the district courts cited [in its decision] and will join them in holding that the mere existence of COVID-19 among the prison population and an inmate's susceptibility to it do not justify waiver of the administrative exhaustion requirement under §3582(c)(1)(A).") (string citations omitted of several cases finding that since defendant failed to exhaust the administrative remedies with BOP, the Court does not possess authority to grant relief under §3582(c)(1)(A)(i), even if based on COVID-19, and that §3582(c)(1)(A) provided no authority to waive the exhaustion requirement); <u>Smith</u>, *supra* (same); <u>Edwards</u>, 2020 WL 1987288, *10 n.6 (court noted that the Third Circuit's conclusion in <u>Raia</u> that the exhaustion requirement was "non-waivable" and that the failure to exhaust administrative remedies forecloses compassionate release was not "mere 'dicta'").

Moreover, the Third Circuit in <u>Raia</u>, 954 F.3d at 597, stated, "[g]iven BOP's shared desire for a safe and healthy prison environment, we conclude

13

that strict compliance with §3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance." *See also* <u>Feiling</u>, 2020 WL 1821457, \*7 ("Because Defendant has failed to exhaust administrative remedies under §3582(c)(1)(A), the Court lacks authority to grant a sentence modification under that provision."); <u>United States v. Soto</u>, 2020 WL 1875147, \*1 (D.Co. April 15, 2020) ("18 U.S.C. §3582(c)(1)(A) imposes a requirement on a defendant requesting compassionate release to exhaust all administrative rights before seeking such relief.") (citation omitted); <u>United States v. Boyles</u>, 2020 WL 1819887, \*2 (D.KS. April 10, 2020) (the court held that since defendant did not exhaust his BOP administrative remedies as required, "it [did] not decide whether he has established that there are 'extraordinary and compelling reasons' why he should be released."); <u>United States v. Wright</u>, 2020 WL 1976828 (W.D.La. April 24, 2020) (court did not need to address whether inmate demonstrated extraordinary and compelling reasons to warrant his release to home confinement under the provisions of the compassionate release statute "due to the grave dangers presented by COVID-19" since inmate did not exhaust his administrative remedies under 18 U.S.C. §3852(c)(1)(A), which is mandatory and "the Court has no power to waive the exhaustion requirement.").

Additionally, insofar as defendant relies upon the CARES Act, which was signed into law on March 27, 2020, as the basis for his release to home confinement, such reliance is misplaced.

14

As the court in United States v. Sawicz, 2020 WL 1815851, *1 (E.D.N.Y. April 10, 2020), recently explained:

> [The] CARES Act expanded the maximum amount of time that a prisoner may spend in home confinement: "if the Attorney General finds that emergency conditions will materially affect the functioning of the [BOP], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement ...." CARES Act §12003(b), Pub. L. No. 116-136, 134 Stat. 281 (2020). Attorney General William Barr made the requisite "finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons" on April 3, 2020, thereby triggering the BOP's authority to expand the amount of time that a prisoner may spend in home confinement.

The determination of which inmates qualify for home confinement under the CARES Act is with the BOP Director. See United States v. Doshi, 2020 WL 1527186, *1 (E.D.Mi. March 31, 2020) (The CARES Act "temporarily permits the Attorney General to 'lengthen the maximum amount of time for which [it] is authorized to place a prisoner in home confinement' under §3624(c)(2)", and "the authority to make this determination is squarely allocated to the Attorney General, under whose authority is the Bureau of Prisons."). In fact, the CARES Act "does not mandate home confinement for any class of inmate." Valenta v. Ortiz, 2020 WL 1814825, *1 (D.N.J. April 9, 2020).

Under the CARES Act "Congress sought to address the spread of the coronavirus in prisons by permitting BOP to expand the use of home confinement under [Section 602 of the First Step Act] §3624(c)(2)." Furando, 2020 WL 1922357, *2 (citing Pub. L. No. 116-36, §12003(b)(2)). "Upon

direction of the Attorney General, Section 12003(b)(2) of the CARES Act temporarily suspends the limitation of home confinement to the shorter of 10 percent of the inmate's sentence or 6 months." *Id.*

Thus, the CARES Act provides that if the Attorney General finds that emergency conditions will materially affect the functioning of the BOP, as he did on April 3, 2020,[6] the BOP Director may increase the maximum amount of time that a prisoner may spend in home confinement under the first sentence of 18 U.S.C. §3624(c)(2). *Id.* at *3; Cruz, 2020 WL 1904476, *4.

As such, "the jurisdiction of [a home confinement] determination [under the CARES Act] is with the Director of the Bureau of Prisons." *Id.*; Cordaro, 2020 WL 2084960, *6.

## III.   CONCLUSION

Defendant Tirado's Motion for Compassionate Release and for Immediate Release to Home Confinement related to the COVID-19 pandemic, (Doc. 700), will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction due to his failure to exhaust his BOP administrative remedies under §3582(c)(1)(A)(i). Further, insofar as defendant is seeking this court to compel the BOP to find that he is eligible for home confinement designation

---

[6] *See* Furando, 2020 WL 1922357, *2-3 (court summarized Barr's Memoranda).

under the CARES Act, the court will **DISMISS** it since the authority to make this determination lies with the BOP Director and not the court. Since defendant's motion will be dismissed, his request for appointment of counsel, (Doc. 700 at 4), will be **DENIED**.

An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Dated: August 4, 2020**
00-133-01

17